RIKER DANZIG LLP
Edwin F. Chociey, Jr., Attorney ID #014811993
Opeyemi D. Akinde, Attorney ID #335432020
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
echociey@riker.com
oakinde@riker.com

Attorneys for Plaintiff
Pamper Palace Inc.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAMPER PALACE INC., <br><br> Plaintiff, <br><br> vs. <br><br> INCAUS, LLC and PREMNAVAZ RAHIM, individually, <br><br> Defendants. | CIVIL ACTION NO. <br><br> CIVIL ACTION <br><br> **COMPLAINT** |

Plaintiff Pamper Palace Inc. ("Pamper Palace"), by way of complaint against defendants Incaus, LLC ("Incaus") and Premnavaz Rahim ("Rahim"), individually, alleges as follows:

Parties

1. Pamper Palace is a corporation organized under the laws of Liberia, with its principal place of business located at Colony Club Resort & Casino, Congo Town, Tubman Boulevard, Montserrado County, Liberia, West Africa.

2. Upon information and belief, Incaus is a limited liability company organized under the laws of the State of Nevada, with its principal place of business located at 800 Bunn Drive, Medical Arts Building, Suite 303, Princeton, New Jersey 08540.

1

3. Upon information and belief, Rahim is an individual residing in the State of New Jersey, with a primary address of 14 Peacock Way, Princeton, New Jersey 08540.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between plaintiff and defendants, and the amount of controversy, exclusive of interest and costs, exceeds $75,000.

5. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b)(2).

## Factual Background

6. Esther Bryant ("Bryant") is the CEO and owner of Pamper Palace, a spa facility located in Monrovia, Liberia that opened in March 2023. Pamper Palace offers high-end wellness and beauty services, including specialized skincare, body massages, hair removal, nailcare and vitamin intravenous ("IV") treatments. Bryant resides in Liberia.

7. On April 18, 2022, Bryant contacted Spa Advisors, Inc. ("Spa Advisors") through its website for assistance in obtaining "high quality products at reasonable prices" for the then-upcoming opening of Pamper Palace. Such products included a multifunction laser machine and a facial machine, among other items potentially.

8. Upon information and belief, based on its website, Spa Advisors purports to be a "full-service salon and spa consulting firm for clients" since 1997 that can assist with projects "across the United States or abroad."

9. Kathryn Moroz, who, upon information and belief, was the President/Senior Management Consultant of Spa Advisors at that time, responded to Bryant. She advised that although Spa Advisors only serviced North America, Rahim could assist with procuring equipment because "his company is global and supplies high quality esthetics equipment".

10. Bryant then spoke with Rahim by phone on April 18, 2022. Bryant reiterated Pamper Palace's need for high quality spa equipment and products, as well as her interest in working with a consultant who could guide her through the process of opening Pamper Palace, as she was new to the spa industry. Rahim assured Bryant that Incaus would be able to provide brand-new spa equipment for Pamper Palace and, due to his extensive experience, he and Incaus would be able to act as both a "spa consultant" and a fiduciary agent for Pamper Palace in the United States. As a fiduciary, defendants agreed to be primarily responsible for making all overseas purchases of equipment and beauty products on Pamper Palace's behalf. During this telephone call, Rahim and Incaus agreed that, in exchange for payment by Pamper Palace, Incaus would deliver to Pamper Palace brand-new spa machines, equipment and beauty products before Pamper Palace's grand opening in January 2023, and Rahim and Incaus would act as Pamper Palace's spa consultant and fiduciary agent in the United States ("Agreement"). As addressed below, Rahim and Incaus confirmed the Agreement by providing Pamper Palace with invoices, and Pamper Palace confirmed the Agreement by paying the invoices.

11. During their phone discussion on April 18, 2022, Rahim represented to Bryant that he was a representative of The Global Beauty Group ("GBG"), an Australia-based provider of medi-aesthetic technology and skincare. Indeed, when corresponding with Bryant, Rahim's email signature line featured information about GBG, including an apparent office location in Princeton, New Jersey, and identified him as the company's "Executive Director". Rahim's email address was "prem@incaus.com". After their phone call, Rahim emailed Bryant with links to "multi-function equipment with award winning technologies", including a MediLux machine, which offers LED skin therapy treatment; the links were from GBG's website.

12. On May 19, 2022, Rahim emailed to Bryant a proposed invoice for two pieces of

3

spa equipment. Attached hereto as exhibit A is a true and correct copy of Incaus' May 19, 2022 invoice to Pamper Palace. The supplier name indicated on the invoice was "Incaus". At the bottom of the invoice, however, Pamper Palace was directed to provide payment to GBG through a checking and routing number connected with Bank of America. The nature of Rahim's business affiliation with GBG and Incaus was unclear to Bryant, and she did not speak with anyone else who worked at Incaus other from Rahim. Pamper Palace did not place an order with Incaus at that time due to concerns about pricing and other logistics. See exhibit A.

13. After multiple discussions with Bryant regarding Pamper Palace's business needs, Rahim recommended an array of beauty products and machines for use at Pamper Palace. Trusting Rahim's purported expertise, Bryant agreed to purchase Rahim's recommended products for Pamper Palace. Rahim informed Bryant that Pamper Palace would be purchasing the products through Incaus, then receive all items directly from GBG.

14. Rahim told Bryant that if she were to visit the United States, he would facilitate training for the spa equipment in which she was interested and would introduce her to GBG's CEO and the CEO of Eminence Organics ("Eminence"), the brand that produced several products that she would purchase for Pamper Palace. Rahim represented that he would help Bryant become an "Eminence Spa Partner", which would entitle her to purchase spa products directly from Eminence for a reduced rate, and potentially become Eminence's head West African representative.

15. In August 2022, based on Rahim's representations and in reliance on his promises, Bryant travelled from Monrovia, Liberia to New Jersey. Upon arrival, Bryant asked Rahim about the meetings and trainings that he had promised to arrange. In response, Rahim informed Bryant that the meetings were "cancelled" because the CEOs of both GBG and Eminence suddenly needed to travel. Instead, Rahim directed Bryant to visit LANA Spa in Princeton, New Jersey and purchase

4

several spa services without reimbursement. Upon information and belief, LANA Spa is owned by Rahim and his wife, Najma Premnavaz. After three days, Bryant returned to Liberia without ever having met with the CEOs of GBG or Eminence, and never having received any training on the spa equipment. This worthless trip to the United States, which Rahim wrongfully and falsely induced Bryant to take, provided Pamper Palace with no material benefits and cost Pamper Palace more than $6,500.

16. After Bryant returned to Liberia, Rahim sent to her multiple invoices for the purchase of spa products and equipment. Such items included, but were not limited to, an $18,000 MediLUX machine (equipped with a "full warranty"); a $9,500 HydroLUX machine; a $16,000 Ozone Steam Sauna; a $4,500 skin analyzer; $6,250 worth of Eminence skin care products, $3,300 worth of IV vitamin drip products; and thousands of dollars' worth of additional beauty creams, serums, powders and the like. Attached hereto as exhibit B is a true and correct copy of Incaus' October 14, 2022, November 8, 2022, January 10, 2023 and February 23, 2023 invoices to Pamper Palace. In total, Pamper Palace paid Incaus at least $61,3392.92 for various machines and skin care products, and paid no less than $5,000 in upfront shipping costs. Attached hereto as exhibit C is a true and correct copy of receipts of money transfers by plaintiff. Rahim advised Bryant that all of these items would be delivered to Pamper Palace by January 2023. In the months that followed, however, it became increasingly apparent that the foregoing items would not be delivered as promised by Rahim.

17. In or about October 2022, Rahim began pressuring Bryant to "invest in the U.S. stock market." Rahim wanted Bryant to invest $150,000, and to speak with high level employees at the Guaranty Trust Bank of Liberia to persuade them to do the same. Bryant repeatedly rejected Rahim's offer and insisted that the scope of their business relationship be limited to Pamper Palace

matters. In January 2023, Rahim shared a promotional stock market presentation with Bryant, wherein he identified himself as an "engineering consultant." In conjunction with defendants' fraudulent activities addressed herein, Rahim's scheme concerning the stock market, as to which he pressured Bryant on a weekly basis for several months, comprised a thinly veiled attempt at defrauding Bryant and Pamper Palace of a substantial amount of money.

18. None of the products ordered by Pamper Palace arrived in Liberia by January 2023. After Bryant so advised Rahim, Incaus issued new invoices for the same products that she had previously ordered in 2022. See exhibit B.

19. Rahim repeatedly represented to Bryant that all equipment ordered by Pamper Palace was brand-new and manufactured solely for use by Pamper Palace. Yet, when Pamper Place received the MediLUX on April 19, 2023, it featured several "dings", scratches and fingerprints; did not include any protective plastic films, ties or coverings; and did not include an instruction manual or any warranty information.

20. Rahim repeatedly misled Bryant about major shipment dates, causing Pamper Palace to incur additional costs from local custom brokers and the Liberia Revenue Authority. For example, Rahim assured Bryant that the Ozone Steam Sauna would be shipped with the MediLUX as a single delivery to arrive on the same date. Rahim stated that the Steam Sauna was included with the MediLUX shipment once the items were purportedly in transit. In fact, Rahim sent to Bryant a copy of the bill of lading for the Ozone Steam Sauna and the MediLUX, representing that the equipment had arrived in Liberia. When Bryant contacted the courier, however, she was informed that the shipment did not actually arrive in Liberia and would not be delivered until late March 2023. The Steam Sauna was not contained in the MediLUX shipment when it arrived on April 19, 2023, however, due to what Rahim belatedly described as a six to nine month delay due

to "Canadian regulations" – a substantial postponement that he did not mention until after the MediLUX had already arrived, and after Pamper Palace had paid taxes, shipping and broker fees on the equipment. Afterward, Bryant demanded a full $16,000 refund for the Steam Sauna, but Rahim refused to acknowledge her repeated requests. Attached hereto as exhibit D is a true and correct copy of emails between Bryant and Rahim, beginning on April 25, 2023 and ending on May 30, 2023.

21. Instead of sending the agreed-on Eminence Organic products, Incaus sent to Pamper Palace large amounts of "Ergo Citrus", an inferior brand that Bryant never agreed to purchase for Pamper Palace. When Bryant addressed this issue with Rahim, he insisted that Ergo Citrus was a type of Eminence Organic product, and that Bryant needed to order it to achieve a "New Spa Starter Package" offered by Eminence Organic. This misrepresentation was swiftly contradicted by Bryant's communications with Eminence Organic's corporate representatives, who confirmed that Ergo Citrics was entirely unrelated to the Eminence Organic brand. Attached hereto as exhibit E is a true and correct copy of emails between Bryant and Eminence Organic on April 4-5, 2023. Pamper Palace expended more than $700 on "Ergo Citrus" products based on Rahim's misrepresentations. See exhibit B.

22. Incaus failed to provide sufficient and accurate quantities of the Eminence Organic products, and instead increased the price of each order by up to three times the listed price shown on the Eminence website, exceeding Incaus' original quoted price. Attached hereto as exhibit F is a true and correct copy of an April 15, 2023 email from Bryant to Rahim.

23. Rahim misled Bryant about the length of time that it would take for Pamper Palace to receive the IV vitamin drips, stating that they would arrive in "four to five business days" post-order. Instead, the IV vitamin drips took more than 30 days to arrive, and were either expired or

were due to expire shortly after Pamper Palace received them.

24. Incaus provided Pamper Palace with an alleged "brand-new" skin analyzer machine that was already logged in with Rahim's credentials. The device cannot be logged out or reset to default, and cannot be used under a separate account, which not only demonstrates that the machine was not "brand-new", but also renders the equipment unsuitable for personalized use by Pamper Palace.

25. Rahim recommended that Pamper Palace employ a certain masseuse from Thailand, and asked Pamper Palace to pay $1,380 in recruitment-related costs for the masseuse. On March 10, 2023, Rahim messaged Bryant with photographs of the masseuse and said that her arrival would be "finalized in two days." The masseuse never arrived in Monrovia, and no refund was provided for those expenses. Instead, Rahim newly insisted that Pamper Palace needed to employ and pay recruitment costs for an additional masseuse due to Thai immigration regulations.

26. Ultimately, all of the products that were sent by Rahim and Incaus did not arrive on time for Pamper Palace's intended grand opening date in January 2023, and instead were delivered to Liberia in multiple shipments throughout the spring of 2023 or not at all.

27. At all times since the Agreement, Bryant has maintained a frequent and transparent line of communication with Rahim. Bryant brought the aforementioned issues, and more, to Rahim through email, WhatsApp messaging and multiple telephone calls. After a series of valid complaints, for the first time and after serving as Pamper Palace's spa advisor for over one year, Rahim declared that Incaus is "not a consultant" or "agent".

28. Tellingly, Rahim has refused to communicate with Bryant by telephone since April 2023.

29. In an attempt to obtain clarity on Incaus and elevate her concerns, Ms. Bryant

contacted Masiha Zekrgoo ("Zekrgoo"), GBG's Export Sales Manager. Zekrgoo advised that GBG does not sell skin analyzers, which Rahim sold to Pamper Palace for $4,500 under the guise of a GBG product. Zekrgoo also advised that Incaus was not authorized to work on GBG's behalf for clients in Africa, as GBG appoints regional distributors based on their geographic location. Attached hereto as exhibit G is a true and correct copy of April 2023 texts between Bryant and Zekrgoo.

30. On August 2, 2023, Bryant, by and through her attorneys, advised Rahim and Incaus by letter about their fraudulent misrepresentations and other wrongful conduct toward Bryant and Pamper Palace, demanding a refund of all products so affected. To date, Rahim and Incaus have failed to respond to the letter.

31. As a result of defendants' wrongful conduct, material misrepresentations and concealment of material facts, Pamper Palace has suffered damages, and did not receive all of the items ordered in advance of its grand opening. Despite this, Bryant opened Pamper Palace to the public in March 2023 in an attempt to mitigate and/or recover Pamper Palace's losses.

## First Count
### (Breach of Contract Against Defendants)

32. Plaintiff repeats and incorporates each and every allegation set forth in the complaint as if set forth at length herein.

33. On or about April 18, 2022, plaintiff and defendants entered into a contract, namely, the Agreement, whereby Incaus agreed to deliver to Pamper Palace brand-new spa machines, equipment and beauty products, and defendants would act as Pamper Palace's spa consultant and fiduciary agent in the United States, in exchange for payment by Pamper Palace.

34. As part of its contractual obligation, plaintiff paid defendants in the amount of $61,392.92.

35. Incaus breached the Agreement by, among other things, failing to provide brand-new spa equipment; failing to deliver the Steam Sauna; failing to provide authentic Eminence products; failing to provide correct quantities of various beauty products; and failing to deliver all items before Pamper Palace's grand opening in January 2023.

36. Defendants breached the Agreement by, among other things, failing to act as Pamper Palace's spa consultant and fiduciary agent in the United States.

37. As a result of defendants' breach of the Agreement, Pamper Palace has suffered and continues to suffer damages.

WHEREFORE, Pamper Palace demands judgment in its favor and against defendants, jointly and severally, for an amount to be determined at trial, including but not limited to nominal, compensatory, liquidated and/or consequential damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs and expenses, and any and all other and further relief that the Court deems just and equitable.

## Second Count
**(Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendants)**

38. Plaintiff repeats and incorporates each and every allegation set forth in the complaint as if set forth at length herein.

39. Every contract in New Jersey contains an implied covenant of good faith and fair dealing.

40. By advising Bryant to travel from Liberia to New Jersey to receive formal spa training, become an Eminence spa partner and meet with the CEOs of GBG and Eminence, and then deliberately not providing any such opportunities, Rahim acted in bad faith and with improper motive. Rahim represented to Pamper Palace that defendants possessed the ability and experience to serve and act as its spa advisor and fiduciary agent, and thereafter wrongfully denied that he had

made such representations to Pamper Palace. By so doing, Rahim has breached the implied covenant of good faith and fair dealing that inheres in the Agreement.

41. By repeatedly providing false information regarding shipment times, product authenticity and pricing, and by failing to provide refunds of substantially delayed or non-existent spa equipment products, Incaus acted in bad faith and with improper motive. By knowingly and materially misrepresenting to Pamper Palace that Incaus was authorized to perform services for clients located in Africa on GBG's behalf, Incaus acted in bad faith and with improper motive. Incaus represented to Pamper Palace that defendants possessed the ability and experience to serve and act as its spa advisor and fiduciary agent, and thereafter wrongfully denied that it had made such representations to Pamper Palace. By so doing, Incaus has breached the implied covenant of good faith and fair dealing that inheres in the Agreement.

WHEREFORE, Pamper Palace demands judgment in its favor and against defendants, jointly and severally, for an amount to be determined at trial, including but not limited to nominal, compensatory, liquidated and/or consequential damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs and expenses, and any and all other and further relief that the Court deems just and equitable.

### Third Count
**(Fraudulent Inducement Against Defendants)**

42. Plaintiff repeats and incorporates each and every allegation set forth in the complaint as if set forth at length herein.

43. Defendants falsely represented to Pamper Palace that they were "spa advisors" and could act as a "spa advisor" for Pamper Palace.

44. More than one year into defendants' business relationship with Pamper Palace, defendants denied that they were a spa advisor for Pamper Palace and further denied any ability or experience to serve as a spa advisor.

45. Incaus falsely represented that it was a distributor of spa equipment through GBG, and that it was capable of providing such equipment to a client in Africa.

46. Defendants knew that Pamper Palace was located in Africa, and that Incaus did not possess authority to service clients in that region.

47. Defendants intended that Pamper Palace rely on their false representations that they were a spa advisor eligible to work in Africa in order to secure business with Pamper Palace.

48. Pamper Palace reasonably relied on defendants' representations when entering into the Agreement.

49. As a result, Pamper Palace has suffered and continues to suffer damages.

WHEREFORE, Pamper Palace demands judgment in its favor and against defendants, jointly and severally, for an amount to be determined at trial, including but not limited to nominal, compensatory, liquidated and/or consequential damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs and expenses, and any and all other and further relief that the Court deems just and equitable.

### Fourth Count
### (Common Law Fraud Against Defendants)

50. Plaintiff repeats and incorporates each and every allegation set forth in the complaint as if set forth at length herein.

51. Defendants knowingly and materially misrepresented Incaus' status as an authorized distributor of GBG products in Africa.

52. Defendants knowingly and materially misrepresented their ability and experience

to serve as a spa advisor for Pamper Palace.

53. Defendants knowingly and materially misrepresented Ergo Citrus to be an Eminence Organic product.

54. Defendants knowingly and materially misrepresented the shipping status of numerous spa machines, pieces of equipment and beauty products.

55. Defendants knowingly and materially misrepresented that the MediLUX machine was "brand-new".

56. Defendants knowingly and materially represented that the skin analyzer machine was a GBG product.

57. Defendants knowingly and materially misrepresented their ability to provide a masseuse from Thailand for employment at Pamper Palace.

58. Defendants knowingly and materially misrepresented the size and quantity of Eminence products that Pamper Palace had ordered.

59. Defendants knowingly and materially misrepresented the cost of certain beauty products in an effort to inflate pricing and obtain overpayments from Pamper Palace.

60. Defendants made these material misrepresentations, and numerous others, with the intention that Pamper Palace rely on them, or should have reasonably expected Pamper Palace to rely on such material misrepresentations.

61. Pamper Palace reasonably relied on defendants' knowing and material misrepresentations.

62. As a result, Pamper Palace has suffered and will continue to suffer damages.

WHEREFORE, Pamper Palace demands judgment in its favor and against defendants, jointly and severally, for an amount to be determined at trial, including but not limited to nominal,

compensatory, liquidated and/or consequential damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs and expenses, and any and all other and further relief that the Court deems just and equitable.

### Fourth Count
(**Violations of the New Jersey Consumer Fraud Act Against Defendants**)

63. Plaintiff repeats the previous allegations set forth above as if fully set forth at length herein.

64. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA"), makes unlawful the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby." N.J.S.A. 56:8-2.

65. Under the CFA, "merchandise" as used above is defined to include "services or anything offered...to the public for sale." N.J.S.A. 56:8-1(c).

66. Pamper Palace, Incaus and Rahim are "persons" as defined by N.J.S.A. 56:8-1(d).

67. Pamper Palace's purchase of spa equipment and products through Incaus, as well as defendants' role and service as a spa advisor, constitute a "sale" as defined by N.J.S.A. 56:8-1(e). Such equipment, products and professional advice are considered "goods", "services", and/or "merchandise" as defined by N.J.S.A. 56:8-1(c).

68. Under the CFA, unlawful conduct is conduct having the capacity to mislead, including conduct evidencing deception, fraud, false pretense, false promises, or

misrepresentations. See N.J.S.A. 56:8-2. Moreover, an unconscionable commercial practice is one that lacks good faith, honesty in fact and the observance of fair dealing.

69. Defendants made material misrepresentations evidencing deception, fraud or false pretenses, including but not limited to:

a. misrepresentations regarding Incaus' capacity to provide services in Africa as a distributor for GBG;

b. misrepresentations regarding their services and scope of work, e.g., defendants' ability to act as a spa advisor, and Incaus providing a masseuse for employment at Pamper Palace and delivering all purchased spa machines, equipment and beauty products by January 2023;

c. misrepresentations regarding the type of products Incaus agreed to provide, e.g., selling Ergo Citrics products under the guise of Eminence Organics; selling a "GBG skin analyzer" machine that is not actually sold by GBG; selling a "brand-new" MediLUX machine with several "dings", no protective coverings, no warranty information and no user manual; and charging Pamper Palace inflated prices for products that were either not provided in accurate quantities, delivered too late so as to frustrate Pamper Palace's purpose of its grand opening in January 2023 or were never delivered to Pamper Palace at all.

70. Defendants' conduct further consists of unconscionable business practices that have the capacity to mislead and were lacking in good faith, honesty in fact and the observance of fair dealing. Other unconscionable business practices include but are not limited to Incaus' refusal to provide a refund for certain machines that never arrived at Pamper Palace; failing to disclose a six to nine month delay in shipping time for the Steam Sauna; Rahim's refusal to communicate with Bryant via telephone for over six months; and Rahim intentionally inducing Bryant to travel to the United States, at considerable expense to Pamper Palace, under false pretenses.

71. Defendants' conduct was intended to defraud Pamper Palace, with the knowledge and intention that Pamper Palace rely on their representations regarding the scope of spa advisor and fiduciary agent services performed by Rahim and Incaus, and the quality of spa machines, equipment and beauty products purchased by Pamper Palace and provided, or not provided, as the case may be, by Incaus.

72. Pamper Palace has suffered an ascertainable loss caused by defendants' misrepresentations and unconscionable business practices.

73. As a result of defendants' violations of the CFA, misconduct and fraudulent behavior, Pamper Palace has suffered and will continue to suffer damages.

WHEREFORE, Pamper Palace demands judgment in its favor and against defendants, jointly and severally, for an amount to be determined at trial, including but not limited to nominal, compensatory, liquidated and/or consequential damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs and expenses, and any and all other and further relief that the Court deems just and equitable.

RIKER DANZIG LLP
Attorneys for Plaintiff
Pamper Palace

By: _____s/Edwin F. Chociey, Jr._____
Edwin F. Chociey, Jr.
Opeyemi D. Akinde

Dated: October 30, 2023

Jury Demand

Pursuant to Fed. R. Civ. P. 38(b) and Local Civil Rule 38.1, plaintiff hereby demands a trial by jury of all issues so triable.

<u>Demand for Rule 26 Initial Disclosures</u>

Pursuant to <u>Fed. R. Civ. P.</u> 26, plaintiff hereby demands all required initial disclosures.

<u>Local Civil Rule 11.2 Certification</u>

In accordance with <u>Local Civil Rule</u> 11.2, Pamper Palace hereby certifies that to the best of its present knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

<u>         s/Edwin F. Chociey, Jr.         </u>
Edwin F. Chociey, Jr.

Dated: October 30, 2023

4868-8027-6350, v. 5